# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRENNAN CENTER FOR JUSTICE,

          Plaintiff,

          v.

DEPARTMENT OF STATE,

          Defendant.

Civil Action No. 15-2200 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, Brennan Center for Justice, challenges the response of the defendant, the U.S. Department of State, to the plaintiff's request, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for all agency records pertaining to unpublished international agreements between the United States and other nations from 1990 to the present. While the original request sought almost thirty years of records, the parties have narrowed the scope of their dispute to redacted information in nine documents prepared for and released in full to the Congress. The parties have now filed cross-motions for summary judgment regarding the propriety of the disputed redactions, and the defendant has moved to dismiss the plaintiff's claims as to those documents no longer disputed. Def.'s Mot. Dismiss, or, in the Alternative, Summ. J. ("Def.'s Mot."), ECF No. 27; Pl.'s Cross-Mot. Summ. J. ("Pl.'s Cross-Mot."), ECF No. 29. For the reasons discussed below, the defendant's motion to dismiss and for summary judgment is granted, and the plaintiff's cross-motion for summary judgment is denied.

## I.      Background

The plaintiff's January 2014 FOIA request sought the defendant's records regarding unpublished international executive agreements transmitted to Congress, pursuant to the Case-

Zablocki Act, 1 U.S.C. § 112b.  Pl.'s Mem. Opp'n Def.'s Mot. & Mem. Supp. Cross-Mot. ("Pl.'s Opp'n") at 1–2, ECF No. 28.  The plaintiff, a nonpartisan law and policy institute, sought these records under FOIA for the purpose of understanding the "scope and nature of international agreements that have been withheld from the full Congress and the public on national security grounds."  *Id.* at 3 (quoting Compl. ¶ 5).  The parties' narrowed dispute is whether the defendant must produce the classification levels for each individual unpublished international agreement listed in nine documents for each of the nine years 2004 through 2011 and 2013.  *Id.* at 5, 8.

### A. The United States's Unpublished International Agreements

The Secretary of State must, as a general rule, publish in a compilation entitled *United States Treaties and Other International Agreements* international agreements that the United States has concluded with another nation.  1 U.S.C. § 112a(a).  Under the Case-Zablocki Act, the Secretary transmits to Congress the text of any such agreement, other than a treaty, "as soon as practicable after such agreement has entered into force with respect to the United States but in no event later than sixty days thereafter."  *Id.* § 112b(a).  The Secretary may determine, however, that a non-treaty agreement need not be published if one of several statutorily-specified criteria apply.  *Id.* § 112a(b).  One such criterion is that "public disclosure of the text of the agreement would, in the opinion of the President, be prejudicial to the national security of the United States."  *Id.* § 112a(b)(2)(D).  Upon determining that a particular agreement's publication would prejudice the national security, the Secretary must transmit the agreement to the appropriate House and Senate committees, rather than to the full Congress, "under an appropriate injunction of secrecy to be removed only upon due notice from the President."  *Id.* § 112b(a).

The Case-Zablocki Act also requires the Secretary to transmits annually to Congress an index of international agreements not published or proposed to be published that the United

States "has signed" or "proclaimed," or "with reference to which any other final formality has been executed, or that has been extended or otherwise modified, during the preceding calendar year." *Id.* § 112b(d)(1). This index lists each agreement "by country, date, title, and summary," and describes "the duration of activities under [each] agreement and [each] agreement itself." *Id.* The Secretary may submit such index in classified form. *Id.* § 112b(d)(2).

## B. The Plaintiff's FOIA Request

On January 31, 2014, the plaintiff requested records pertaining to the Secretary's non-publication of international agreements pursuant to the Secretary's authority under 1 U.S.C. § 112a and those agreements' transmission to Congress in compliance with the Case-Zablocki Act. Pl.'s Opp'n at 3. For a period of almost thirty years—1990 to the present—the plaintiff sought (1) the number of international agreements withheld from publication due to a determination that such agreements' publication posed a risk to national security; (2) the number of international agreements withheld from publication pursuant to 22 C.F.R. § 181.8(a)(9), which implements the Case-Zablocki Act, *see id.* § 181.1, by providing for non-publication of international agreements that have received a national security classification; (3) the number of international agreements transmitted to appropriate congressional committees under an injunction of secrecy; (4) the number of such agreements presently held under an injunction of secrecy; (5) the number of such agreements for which an injunction of secrecy was removed; and (6) the title, date, identity of the parties, and description of those agreements whose injunction of secrecy was removed. Pl.'s Opp'n at 3–4. The plaintiff also sought, for the period 1972 to the present, any unclassified reports submitted, in whole or part, to Congress in compliance with the Case-Zablocki Act, and, for a slightly shorter period, any report submitted under this law to the Speaker of the House of Representatives and Chairman of the Senate Committee on Foreign Relations. *Id.* at 4. Finally,

the plaintiff sought records explaining what constitutes, under 1 U.S.C. § 112b(a), an "appropriate injunction of secrecy" or a disclosure that is "prejudicial to the national security of the United States," or any other terms or provisions of 1 U.S.C. §§ 112a(b)(2)(B), 112a(b)(2)(D), 112a(c), 112b(a), 112b(b), 112b(d), or 112b(e), or 22 C.F.R. §§ 181.2(a)(1) or 181.7. *Id.*

The defendant, by letter dated February 26, 2014, acknowledged receipt of the plaintiff's FOIA request and denied the plaintiff's request for expedited processing, but did not provide an estimated date of completion for the request. *Id.* at 5.

### C. The FOIA Lawsuit and the Documents At Issue

Ten and a half months after the plaintiff had submitted its FOIA request, the defendant had not issued a final response determining whether the defendant would release the requested records. *Id.* The plaintiff filed the instant action under FOIA on December 17, 2015, to compel the defendant to produce the requested records. *Id.* At that time, the defendant had not finished processing the plaintiff's FOIA request. Def.'s Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s SUMF") ¶ 1, ECF No. 27. Between June 6, 2016 and January 17, 2017, the defendant undertook a rolling production of records to the plaintiff, producing to the plaintiff ninety-three records in full and forty-three records in part and withholding another twenty-two records entirely, which the defendant documented through submission to the Court of nine Status Reports. *See* Defendant's First through Ninth Status Reports, ECF Nos. 14, 15, 16, 18, 19, 21, 22, 23 & 24. Among the records the defendant produced to the plaintiff were a 2012 Index, which contained no classified agreements and which the defendant thus produced in full, and a similar index for the year 2014, which the defendant redacted in part to remove information regarding an agreement whose content, but not existence, was classified. Decl. of Eric F. Stein, Dir., Office of Info. Programs & Servs. ("OIPS"), U.S. Dep't of State ("First OIPS

Decl.") ¶ 19 n.1, ECF No. 27-1. Using the information the defendant produced, the plaintiff was able to publish a table in a report, entitled *The New Era of Secret Law* (Oct. 2016), that listed, for the years 2004 through 2014, the number of published and unpublished international agreements that the United States concluded, as well as the percentage of such agreements not published. Pl.'s Opp'n at 6. [1]

The parties ultimately agreed to further narrow their dispute to the defendant's redaction of the classification levels of each executive agreement listed in the following nine documents, totaling 164 pages:

1. Document C05997746: a 10-page table entitled "Case Act Index – 2004 (Sorted by Country)" ("2004 Index");

2. Document C05997747: a 19-page table entitled "Case Act Index – 2005 (Sorted by Country)" ("2005 Index");

3. Document C06005005: a 23-page table entitled "Index of International Agreements for the 2006 reporting year submitted in fulfillment of the requirements of 1 U.S.C. 112b (d)" ("2006 Index");

4. Document C06005002: a 19-page table entitled "Index of International Agreements for the 2007 reporting year submitted in fulfillment of the requirements of 1 U.S.C. 112b (d)" ("2007 Index");

5. Document C06005001: a 27-page table entitled "2008 Index of International Agreements Not Printed in TIAS submitted in fulfillment of the requirements of 1 U.S.C. § 112b(d)" ("2008 Index");

6. Document C06004999: a 17-page table entitled "Index of International Agreements for the 2009 reporting year submitted in fulfillment of the requirements of 1 U.S.C. 112b (d)" ("2009 Index");

7. Document C06004998: a 16-page table entitled "Index of International Agreements for the 2010 reporting year submitted in fulfillment of the requirements of 1 U.S.C. 112b (d)" ("2010 Index");

---

[1] The full citation to the plaintiff's report is: ELIZABETH GOITEIN, BRENNAN CTR. FOR JUSTICE, THE NEW ERA OF SECRET LAW 49 tbl. (Oct. 2016), https://www.brennancenter.org/sites/default/files/publications/The_New_Era_of_Secret_Law_0.pdf.

8. Document C06004997: a 17-page table entitled "Index of International Agreements for the 2011 reporting year submitted in fulfillment of the requirements of 1 U.S.C. 112b (d)" ("2011 Index");

9. Document C06004994: a 16-page table entitled "Index of International Agreements for the 2013 reporting year submitted in fulfillment of the requirements of 1 U.S.C. 112b (d)" ("2013 Index").

Pl.'s Opp'n, Ex. A, 2005 – 2011, 2013 Indices, ECF No. 28-1; Joint Status Report, dated Mar. 17, 2017, at 1, ECF No. 25; First OIPS Decl. ¶ 14; Pl.'s Reply Mem. Supp. Pl.'s Cross-Mot. ("Pl.'s Reply") at 6, ECF No. 33. The nine disputed documents are each classified as "Secret" pursuant to Executive Order 13,526 ("EO 13,526"), except for the 2010 Index, which was classified as "Confidential." First OIPS Decl. ¶ 15. The defendant initially had labeled the 2011 Index as "Sensitive But Unclassified," but determined upon review after receiving the FOIA request that the document had been mislabeled due to a clerical error and contained "Secret"-level information. *Id.* ¶¶ 13, 15.

The defendant produced all nine documents, but redacted all substantive information in the text "except for the consecutive numbers for each listed entry appearing on the left margin of each index." Pl.'s Opp'n at 5–6. Using this information, the plaintiff was able to determine the number of international agreements withheld from publication annually, but not the number of such agreements that are classified or each agreement's level of classification—*i.e.*, confidential, secret- or existence-classified. *Id.* at 6.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "In FOIA cases, 'summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by

contradictory evidence in the record or by evidence of agency bad faith.'" *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)). Indeed, the D.C. Circuit has observed that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

The FOIA was enacted "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request." *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015) (citing *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)). Reflecting the necessary balance between the public's interest in governmental transparency and "legitimate governmental and private interests that could be harmed by release of certain types of information," *United Techs. Corp. v. U.S. Dep't of Defense*, 601 F.3d 557, 559 (D.C. Cir. 2010) (quoting *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc) (alterations omitted)), the FOIA contains nine exemptions, set forth in 5 U.S.C. § 552(b), which "are explicitly made exclusive and must be narrowly construed," *Milner v. U.S. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal quotation marks and citations omitted); *see also Murphy v. Exec. Office for U.S. Attys.*, 789 F.3d 204, 206 (D.C. Cir. 2015); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice (CREW)*, 746 F.3d 1082, 1088 (D.C. Cir. 2014); *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

In litigation challenging the sufficiency of "the release of information under the FOIA, 'the agency has the burden of showing that requested information comes within a FOIA

exemption.'" *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 185 F.3d 898, 904 (D.C. Cir. 1999) (quoting *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18 (D.C. Cir. 1999)); *see also U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 171 (1993) (noting that "[t]he Government bears the burden of establishing that the exemption applies"); *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 352 (1979) (finding that the agency invoking an exemption bears the burden "to establish that the requested information is exempt"); *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014). This burden does not shift even when the requester files a cross-motion for summary judgment because "the Government 'ultimately [has] the onus of proving that the [documents] are exempt from disclosure,'" while the "burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur,'" *Pub. Citizen Health Research Grp.*, 185 F.3d at 904–05 (quoting *Nat'l Ass'n of Gov't Emps. v. Campbell*, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

An agency may carry its burden of showing an exemption was properly invoked by submitting sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption to enable the adversary system to operate. *See Judicial Watch, Inc.*, 726 F.3d at 215 ("In FOIA cases, 'summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" (alteration adopted) (quoting *Consumer Fed'n of Am.*, 455 F.3d at 287)); *CREW*, 746 F.3d at 1088 (noting that an agency's burden is sustained by submitting an affidavit that "'describe[s] the

justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith'" (quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009))); *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (instructing that an agency's description "should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection[,] . . . [which] serves the purpose of providing the requestor with a realistic opportunity to challenge the agency's decision.") (internal citation omitted). While "an agency's task is not herculean" it must "'describe the justifications for nondisclosure with reasonably specific detail' and 'demonstrate that the information withheld logically falls within the claimed exemption.'" *Murphy*, 789 F.3d at 209 (quoting *Larson*, 565 F.3d at 862). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011)); *Larson*, 565 F.3d at 862 (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

The FOIA provides federal courts with the power to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). District courts must "determine *de novo* whether non-disclosure was permissible," *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015), by reviewing the *Vaughn* index and any supporting declarations "to verify the validity of each claimed exemption." *Summers v. U.S. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). In addition, the court has an "affirmative duty" to consider whether the agency has produced all segregable, non-exempt information. *Elliott v. U.S. Dep't of*

*Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (referring to court's "affirmative duty to consider the segregability issue *sua sponte*") (quoting *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007)); *Stolt–Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) ("[B]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.") (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007))); *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) ("[W]e believe that the District Court had an affirmative duty to consider the segregability issue *sua sponte* . . . even if the issue has not been specifically raised by the FOIA plaintiff."); *see also* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

## III. ANALYSIS

The nine disputed documents each list alphabetically, by non-United States signatory nation, unpublished international agreements that the United States has entered, including some the very existence of which is classified. First OIPS Decl. ¶ 16. After the parties narrowed their dispute, the defendant moved for dismissal in part and for summary judgment in part, asserting that the redacted information implicated national security concerns and thus was properly withheld under FOIA's Exemption 1. Def.'s Mot.; Def.'s Mem. Supp. Mot. ("Def.'s Mem.") at 4–6, ECF No. 27.[2] The defendant contends that "all reasonably segregable material has been provided," because the classification levels, even if "seemingly innocuous information" taken by

---

[2]     The defendant's motion to dismiss the plaintiff's claims as to those documents that no longer are at issue, Def.'s Mot.; *see also* Def.'s Mem. at 2–4; Def.'s Reply Pl.'s Opp'n & Opp'n Pl.'s Cross-Mot. ("Def.'s Reply") at 1–2, ECF No. 31, is granted because the plaintiff has offered no argument as to why dismissal is inappropriate with respect to documents that already have been produced to the plaintiff. Accordingly, the plaintiff's claims are dismissed as to all documents but the nine documents that remain at issue.

itself, may if produced cause damage to national security interests "when considered in context of a mosaic of other [publicly-known] information." Def.'s Mem. at 7.

While not disputing the defendant's assertion that the documents fall within the scope of FOIA Exemption 1, the plaintiff nonetheless characterizes the defendant's "mosaic" argument as "not logical," "convoluted and wholly speculative," and seeks *in camera* review of the documents to determine whether additional segregable material may be disclosed. Pl.'s Opp'n at 8, 11–14. The sole dispute that remains before the Court thus is whether the classification levels of the agreements listed in the nine disputed documents are segregable and subject to disclosure.[3] In view of the defendant's credible affidavits explaining how the classification levels' production would threaten the national security, and the weight that must be accorded to such explanations, the defendant has met its burden of showing that the documents contain no further segregable information that need be produced to the plaintiffs. Thus, as explained more fully below, the defendant is, and the plaintiff is not, entitled to summary judgment.

## A. Classification to Protect National Security

FOIA's first exemption applies to "matters that are . . . specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Exemption 1 "cover[s] not only the content of protected government records but also the fact of their existence or nonexistence." *Larson*, 565 F.3d at 861. In a case involving

---

[3] The plaintiff observes that the "[d]efendant rejected plaintiff's offer to settle the litigation by providing, for each index, a count of how many agreements fell within each classification category—a solution that could have been implemented in a manner of minutes without implicating the hypothetical 'mosaic theory' scenario posited by the agency." Pl.'s Opp'n at 8. The plaintiff's settlement offer is irrelevant to the validity of the defendant's withholdings, as any count of the number of agreements of each classification category would have constituted a new record that FOIA does not oblige the defendant to create. *See Forsham v. Harris*, 445 U.S. 169, 186 (1980) ("[T]he FOIA imposes no duty on the agency to create records."); *Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("[A]n agency is not required by FOIA to create a document that does not exist in order to satisfy a request.").

records withheld pursuant to Exemption 1, "a reviewing court 'must recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects . . . might occur as a result of public disclosures of a particular classified record.'" *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)) (internal quotation marks omitted). As courts "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case," *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980), they "accord 'substantial weight' to agency affidavits" in national security cases, *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Although a district court "accord[s] substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record," the court does not "relinquish[] [its] independent responsibility" "to conduct a de novo review of the classification decision." *Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987) (emphasis and internal quotation marks omitted) (quoting *Military Audit Project*, 656 F.2d at 738). A district court nonetheless must mind "that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm rather than an actual past harm." *Halperin*, 629 F.2d at 149. "[T]o require an actual showing that particular disclosures of" classified information would cause "identifiable concrete harm" would "overstep[] by a large measure the proper role of a court in a national security FOIA case." *Id.*

EO 13,526 allows an agency to classify information if the agency "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to

the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage." Exec. Order No. 13,526 § 1.1(a)(4) (Dec. 29, 2009). "Damage to the national security" is defined as "harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information." *Id*. § 6.1(l). Information properly is classified as "Secret" if its "unauthorized disclosure . . . reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe," and as "Confidential" if its "unauthorized disclosure . . . reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe." *Id*. § 1.2(a)(2), (3). "Information that has not previously been disclosed to the public . . . may be classified or reclassified after an agency has received a [FOIA] request . . . if such classification meets the requirements of this order and is accomplished on a document-by-document basis with the personal participation or under the direction of" an appropriate supervisor. *Id*. 1.7(d).

EO 13,526 contemplates that "[c]ompilations of items of information that are individually unclassified may be classified if the compiled information reveals an additional association or relationship that: (1) meets the standards for classification under this order; and (2) is not otherwise revealed in the individual items of information." *Id*. § 1.7(e). In this way, EO 13,526 recognizes that "the business of foreign intelligence gathering in this age of computer technology is more akin to the construction of a mosaic than it is to the management of a cloak and dagger affair," as "[t]housands of bits and pieces of seemingly innocuous information can be analyzed and fitted into place to reveal with startling clarity how the unseen whole must operate." *Halkin v. Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978); *cf. United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir.

1989) ("Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods.").

The Supreme Court has recognized in the FOIA context that "[f]oreign intelligence services have both the capacity to gather and analyze any information that is in the public domain and the substantial expertise in deducing" sensitive national security information "from seemingly unimportant details." *CIA v. Sims*, 471 U.S. 159, 178 (1985). "[T]he very nature of the intelligence apparatus of any country is to try to find out the concerns of others; bits and pieces of data 'may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself." *Id.* (quoting *Halperin*, 629 F.2d at 150). Thus, "[w]hat may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." *Id.* (quoting *Halkin*, 598 F.2d at 9). The D.C. Circuit has found persuasive "similar mosaic arguments in the context of national security." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 928 (D.C. Cir. 2003); *see also id.* at 929 ("While the name of any individual detainee may appear innocuous or trivial, it could be of great use to al Qaeda in plotting future terrorist attacks or intimidating witnesses in the present investigation."); *Edmonds v. U.S. Dep't of Justice*, 405 F. Supp. 2d 23, 32–33 (D.D.C. 2005) (accepting the government's mosaic argument in a FOIA case); *Edmonds v. FBI*, 272 F. Supp. 2d 35, 47 (D.D.C. 2003) (granting the government partial summary judgment in a FOIA case where withheld information "was intertwined with the sensitive matters at the heart of the case and could not be further segregated and . . . other categories of information were withheld because, in view of the information relevant to this matter that is already in the public arena, they would tend to reveal

matters of national security even though the sensitivity of the information may not be readily apparent in isolation.").

### B. The Defendant Has Properly Withheld the Documents at Issue

Set against this standard, the defendant has met its burden to show that all reasonably segregable material in the nine documents at issue have been produced. The defendant argues that the documents "ha[ve] been properly withheld under Exemption 1 because [their] release would reveal sensitive aspects of U.S. foreign relations, in particular, international agreements the existence of which implicates issues of U.S. national security." Def.'s Mem. at 6. "Release of the information withheld," the defendant argues, "has the potential to inject friction into, or cause damage to, a number of the country's bilateral relationships with countries whose cooperation is important to U.S. national security." *Id.* (citing First OIPS Decl. ¶ 11). The defendant further argues that the withheld information "pertains to foreign relations or foreign activities of the United States, including confidential sources," and that its production "reasonably could be expected to cause serious damage or damage to the national security." *Id.* (citing First OIPS Decl. ¶¶ 5–9, 14–16).

An analyst for a foreign government could use the information contained in each entry reflecting an agreement's "title," "entry in force," "summary," and "expiration" to determine which nations have concluded existence-classified agreements with the United States, even if those nations' identities were redacted. First OIPS Decl. ¶ 17. Moreover, because the documents at issue list international agreements alphabetically by nation, redacting information relating only to existence-classified agreements would not suffice to protect the classified information, as an analyst could discern at least some of the nations with which the United States has concluded existence-classified agreements by seeing where within the alphabetical list the

redacted information appears. *Id.* ¶ 16. Even where alphabetization leaves ambiguity as to the nation with which the United States has concluded an existence-classified agreement, the analyst could combine the information the plaintiff seeks with other publicly-available information to identify the nations with which the United States has existence-classified agreements. *Id.* In these ways, the analyst could discover classified information for which public disclosure could harm the United States' relations with nations that rely on the United States' commitment not to divulge existence-classified agreements' existence. *Id.*

Producing only each agreement's classification-level notation likewise would not suffice to protect classified information, because any such notations the defendant could produce would be listed alphabetically by nation, even if the nations' identities were redacted. *Id.* ¶ 18. Using alphabetically-arranged copies of unclassified agreements exempt from publication, which the defendant makes available to the public upon request, *see* 1 U.S.C. § 112a(b)(3), a researcher could fill in all rows of the produced documents marked "unclassified," then deduce which nations have concluded existence-classified agreements with the United States based on where any existence-classified notations fall alphabetically in these lists. First OIPS Decl. ¶ 18.

The plaintiff provides no indication that the defendant has fallen short of acting in good faith to produce all reasonably segregable material; indeed, the defendant's production of the 2012 and 2014 Case-Zablocki Act Indices, which the defendant determined required no or little redaction, to protect classified information, *see id.* ¶ 19 n.1, shows otherwise. The plaintiff instead argues that the defendant can produce many, if not most, of the classification levels in the nine documents at issue without disclosing the identities of nations which the United States has concluded existence-classified agreements. Pl.'s Opp'n at 11–14. The plaintiff acknowledges that an enterprising foreign analyst could use publicly-available information to ascertain the

identities of those nations in each document with which the United States has concluded unclassified agreements, and then identify nations with which the United States has concluded existence-classified agreements where such existence-classified agreements fall between two unclassified agreements with the same nation, as in the following illustration:

| Classification Status | Nation |
| --- | --- |
| Unclassified | [redacted] [Lalaland, filled in by researcher] |
| Existence-Classified | [redacted] |
| Unclassified | [redacted] [Lalaland, filled in by researcher] |

*Id.* at 12. Here, an analyst easily could determine that the United States has concluded an existence-classified agreement with Lalaland, because unclassified agreements with Lalaland flank the existence-classified agreement on both sides. *See id.* The plaintiff asserts, however, that an analyst who sees only the following would be unable to determine with which nation the United States has concluded an existence-classified agreement:

| Classification Status | Nation |
| --- | --- |
| Unclassified | [redacted] [Lalaland, filled in by researcher] |
| Existence-Classified | [redacted] |
| Unclassified | [redacted] [Mamaland, filled in by researcher] |

*Id.* An analyst presented with this information, the plaintiff argues, would be unable to determine whether the United States has concluded an existence-classified agreement with Lalaland or Mamaland. *See id.* Likewise, the plaintiff asserts, an analyst will be unable to determine with which of Lalaland, Mamaland, or Nanaland the United States has concluded an existence-classified agreement if she sees the following:

| Classification Status | Nation |
| --- | --- |
| Unclassified | [redacted] [Lalaland, filled in by researcher] |
| Existence-Classified | [redacted] |
| Unclassified | [redacted] [Nanaland, filled in by researcher] |

*Id*. The plaintiff similarly asserts that the analyst will be unable to determine the identity of any nation that has concluded an existence-classified agreement with the United States if she sees:

| Classification Status | Nation |
| --- | --- |
| Unclassified | [redacted] [Lalaland, filled in by researcher] |
| Existence-Classified | [redacted] |
| Existence-Classified | [redacted] |
| Existence-Classified | [redacted] |
| Unclassified | [redacted] [Nanaland, filled in by researcher] |

*Id*. at 13.

Based on these examples, the plaintiff argues, two conditions must obtain for the defendant's mosaic theory to prevail: each page of each document at issue must list an existence-classified agreement that is (1) bookended by unclassified agreements, which (2) the United States has concluded with the same nation. *Id*. at 11–13. Even where such conditions obtain, the plaintiff argues, "the agency could easily engage in a partial redaction of the classification levels on those pages, redacting this information in enough entries to throw off the alphabetic deduction, while releasing the classification levels on the others." *Id*. at 13. As such, the plaintiff says, the defendant's assertion that it cannot segregate and release any information that these documents contain is "patently overbroad." *Id*. At a minimum, the plaintiff asserts, the documents should be inspected *in camera* to "determine whether the agency's hypothetical

conditions are actually present." *Id.* (citing *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998) (observing that "*in camera* inspection does not depend on a finding or even tentative finding of bad faith" (alterations omitted))).

The plaintiff's argument is flawed because even the limited disclosures the plaintiff seeks could cause damage to the national security. The sequencing that the plaintiff acknowledges would enable a foreign analyst to determine the identity of a nation with which the United States has concluded an existence-classified agreement—that agreement's location between two unclassified agreements concluded with the same nation—in fact occurs in the withheld documents. Second Decl. of Eric F. Stein, Dir., OIPS ("Second OIPS Decl.") ¶ 11, ECF No. 31-1. Moreover, disclosure of agreements' classification levels could damage the national security even where such disclosure would not enable an analyst to identify with certainty the nations with which the United States has concluded existence-classified agreements, because the defendant "has the right to assume that foreign intelligence agencies are zealous ferrets" who may draw useful inferences from partial bits of information that form a larger mosaic. *Larson*, 565 F.3d at 864 (quoting *Gardels v. CIA*, 689 F.2d 1100, 1106 (D.C. Cir. 1982)). The plaintiff also fail to account for the reality that the United States is not equally likely to conclude an agreement, let alone an existence-classified agreement, with every nation; as such, the possibility that any nation in the world might be counter-party to a particular existence-classified agreement does not adequately protect the counter-party nation's identity, given that the actual pool of potential counter-parties is more limited. Second OIPS Decl. ¶ 12.[4] As the defendant observes,

---

[4]     The defendant, addressing an example that the plaintiff presented, elaborates that "[b]ased on what is publicly known about the United States' relations with" five specified nations, "one could then make an informed guess about the name of the country that concluded the existence-classified agreement." Def.'s Reply at 6. The plaintiff observes that "quick Google searches reveal that the U.S. has bilateral agreements with each of those [five] countries," and argues that "[i]t is thus unclear, at best, how one could make an informed guess as to the identity of the particular country in that example." Pl.'s Reply at 4 (internal quotation marks omitted). This is probative of little—the plaintiff identifies no evidence that the United States is materially likelier to have concluded an existence-

"someone knowledgeable of the complex web of U.S. diplomatic relations with other countries could look at a gap in the alphabetical list and predict with a high degree of certainty the country that would fill that gap." *Id.* Finally, disclosure of some pages of the documents at issue would allow an analyst to infer that the withheld pages contain existence-classified information. *Id.* ¶ 15. Using the methods described above, an analyst could compare the disclosed pages with publicly-available unclassified agreements to determine which section of the alphabet the withheld pages covered. *Id.* This information, in conjunction with other publicly-available information about U.S. foreign relations, could allow a researcher to identify "with a reasonable degree of certainty" nations with which the United States had concluded existence-classified agreements. *Id.*

Identification of nations with which the United States might potentially have concluded an existence-classified agreement is not the only danger to the national security that production, in whole or part, of the documents at issue may cause. Even mere public speculation that a particular nation, or subset of nations, has concluded one or more existence-classified agreements with the United States could reasonably be expected to cause damage to the national security. Such agreements are existence-classified in part because classification allows the United States to maintain military and intelligence relationships with nations whose populaces or neighbors might not favor such cooperation. *Id.* ¶ 13.

For these reasons, the defendant has made a "logical" and "plausible" showing that disclosure of any portion of the documents at issue may harm the national security. *Judicial*

---

classified agreement with a nation with which the United States has concluded an unclassified agreement than with a nation with which the United States has not concluded an unclassified agreement. In any event, foreign analysts presumably have at their disposal more advanced analytical tools for identifying nations with which the United States has concluded existence-classified agreements than Google Search. *See Larson*, 565 F.3d at 864. What is "unclear" to the plaintiff, Pl.'s Reply at 4, may, in the context of publicly-available information aggregated via sophisticated analytical methods, nonetheless be perfectly clear to a foreign government. *Yunis*, 867 F.2d at 623.

*Watch, Inc.*, 715 F.3d at 941. As such, and absent any indication of bad faith on the defendant's part, *see Judicial Watch, Inc.*, 726 F.3d at 215, *in camera* review is unnecessary to conclude that the defendant has met its burden to obtain summary judgment. *See PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 253 (D.C. Cir. 1993) ("[*I*]n camera review is generally disfavored," and "is not a substitute for the government's obligation to justify its withholding in publicly available and debatable documents." (internal quotation marks omitted)); *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977) ("[I]n camera proceedings are particularly a last resort in 'national security' situations.").

## IV.     Conclusion

For the foregoing reasons, the plaintiff's claims are dismissed as to all documents but the nine disputed documents, as to which the defendant's motion for summary judgment is granted, and the plaintiff's cross-motion for summary judgment is denied. An appropriate Order accompanies this Memorandum Opinion.

**Date:** November 6, 2017

_____
BERYL A. HOWELL
Chief Judge